**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 8, 2013**

# In the Court of Appeals of Georgia

A12A2524. FREDERICK CORTEZ GLENN v. THE STATE.

MCMILLIAN, Judge.

On February 8, 2012, the State filed a verified in rem Complaint for Forfeiture pursuant to OCGA § 16-13-49 against, inter alia, $17,900 and a Grey "First Alert" Fire & Security Safe with Key labeled #755.[1] Frederick Cortez Glenn ("Glenn") filed a verified Answer and Counterclaim on March 7, 2012, in which he asserted the safe contained $44,700 in settlement funds to which he was entitled. On March 28, 2012,

---

[1] In the complaint for forfeiture, the State also sought "a Smith & Wesson 'Bodyguard' .38 Special Caliber Revolver, black in color with broken trigger guard, SN: CPW9546; Grendel Inc, Model P12, .380acp caliber, Semi-Automatic Handgun, black in color with tape on grips, SN: 09542; Black .380acp caliber magazine, 43 rounds of .380 acp ammunition; 24 rounds of .38 special ammunition; [and] Four (4) Black Cell Phones." Glenn makes no claim as to this property in his Answer and Counterclaim.

the State filed a Motion to Strike Appellant's Answer and Counterclaim[2], which was granted by the trial court without a hearing[3] on May 25, 2012, because Glenn "failed to fully comply with the requirements of OCGA § 16-13-49 (o) (3)," in that his answer failed to "provide all of the essential facts supporting the assertions surrounding the acquisition and accounting of the funds seized." On May 30, 2012, the trial court entered a Judgment and Order of Forfeiture and Disposition of Property.

Glenn alleges two enumerations of error by the trial court: (1) the trial court erred in granting the State's Motion to Strike Appellant's Answer and Counterclaim as insufficient under OCGA § 16-13-49 (o) (3) (F); and (2) the trial court erred by finding the State's Complaint for Forfeiture established a prima facie case for forfeiture.

The record shows that on December 20, 2011, Charlotte D. Scott ("Ms. Scott") obtained a Temporary Protective Order ("TPO") against Glenn, and on December 21,

---

[2]Glenn did not file a response to the State's Motion to Strike Appellant's Answer and Counterclaim.

[3]The trial court initially set a hearing date for May 9, 2012, which was re-set for May 4, 2012, and then continued for good cause to June 6, 2012. After the trial court issued its Judgment and Order of Forfeiture and Disposition of Property, the hearing for June 6, 2012, was cancelled.

2011, Clayton County Sheriff Deputies served Glenn with a copy of the TPO. Glenn was asked by the deputies to surrender any firearms that he owned, and he told the deputies he did not own any firearms. Ms. Scott, however, alerted the deputies in the TPO information sheet that appellant owned two firearms.

On December 21, 2011, the deputies contacted Ms. Scott to confirm that Glenn owned two firearms, and she verified that the two firearms he owned were in a safety box in her home. According to the deputies, Ms. Scott stated she did not want Glenn's safe in her home because she feared he would come to retrieve his safe and use the firearms to kill her children and her. When deputies arrived at Ms. Scott's residence later that day, she led them upstairs to a closet where she said Glenn's safe was located with his belongings. The deputies removed Glenn's safe from the residence and placed it into evidence for safekeeping at Ms. Scott's request because she was scared for her life. Ms. Scott, however, disputed telling the deputies that Glenn had firearms in the safe, although, she admitted telling them that Glenn owned two firearms and that she was afraid of him if he came to retrieve his items and found his safe missing.

On December 28, 2011, Glenn and his attorney appeared at the Clayton County Sheriff's Office to surrender his firearms, which Glenn admitted were in the safe.

3

Glenn gave his key to the safe to the deputies. When the safe was opened, the deputies located 16.3 grams of marijuana, which was packaged in three small bags in a manner commonly used for distribution. The safe also contained firearms, ammunition, cell phones, $17,900, and other miscellaneous items and documents. Glenn indicated that the marijuana in the safe belonged to him and later stated in his answer in this case that the marijuana was for his personal use. He was arrested and placed into custody.

In his Answer and Counterclaim, Glenn explained the circumstances surrounding the acquisition of the money as follows:

> The forty-four thousand, seven hundred dollars ($44,700.00) in U.S. Currency is part of the proceeds of two checks in the amount of twenty-nine thousand dollars ($29,000.00) each, that were both issued payable to Claimant on September 16, 2011, and October 19, 2011, by the Law Offices of Don Cary Collins, Esq., 126 West Main Street, Belleville, Illinois, 62220, (618) 234-2001. The checks were issued as part of settlement proceeds from a legal matter as regards a damages claim set forth in a suit filed in the Circuit Court for the 20th Judicial Circuit, St. Clair County, IL, Cause No. 07-L-562, entitled *Frederick Glenn and Patrillo Quarles as Co-Administrators of the Estate of Sonya Sanchez Glenn deceased, and Frederick Glenn, individually, vs. Kenneth Hall Regional Hospital, Jaafar Bermani, M.D., and Mohammad Hashemi, M.D.* Claimant placed the cash proceeds of each check into his safe for

4

safe-keeping. He withdrew a portion of the cash for automobile improvements, leaving forty-four thousand, seven hundred dollars ($44,700.00) in the safe at the time it was seized by officers of CCSO.[4]

1. We turn first to Glenn's second enumeration of error asserting that the trial court erred by finding the state's complaint established a prima facie case for forfeiture. Glenn asserts that the complaint fails to establish that the money was connected to the marijuana, citing OCGA § 16-13-49 (e) (2), which provides that, "[a] property interest shall not be subject to forfeiture under this Code section for a violation involving . . . four ounces or less of marijuana unless said property was used to facilitate a transaction in or a purchase of or sale of a controlled substance or marijuana."

In *Rabern v. State*, 221 Ga. App. 874, 876 (473 SE 2d 547) (1996), this Court held that "OCGA § 16-13-49 (e) does not require evidence of an actual sale or purchase of marijuana . . . to support forfeiture." (Emphasis omitted.) This Court concluded, however, that "[w]hile the State does need to show a strong nexus

_____

[4]Glenn maintains the currency in the safe was not counted in his or his attorney's presence and asserts that the safe contained $44,700 in currency, not $17,900 as asserted by the State. We note that this in rem forfeiture only concerns the $17,900 in currency sought by the State. We do not address any separate claim Glenn may have for the alleged balance.

5

between the property and the alleged violation if the amount of marijuana seized totals four ounces or less, the State can show this nexus in cases where an actual sale does not occur." *Rabern* 221 Ga. App. at 877. "The fact that money . . . was found in proximity to contraband or to an instrumentality of conduct giving rise to forfeiture authorizes the trier of fact to infer that the money . . . was the proceeds of conduct giving rise to forfeiture or was used or intended to be used to facilitate such conduct." OCGA § 16-13-49 (s)(2).

We find that the trial court in this case properly concluded that the State set out a prima facie case for forfeiture. Here, the State alleged that Glenn, along with his attorney, went to the Clayton County Sheriff's Office seeking the return of his safe and its contents. Glenn provided a key to open the safe at which time the deputies discovered 16.3 grams of marijuana packaged for sale along with $17,900 in U.S. currency, handguns, ammunition, and other personal property. The presence of such a large amount of currency in close proximity with firearms, ammunition, and 16.3 grams of marijuana packaged in three small bags, a manner commonly used for distribution, sets out a prima facie case that the marijuana was used to facilitate a transaction in or purchase of or sale of marijuana. See *Howard v. State*, 223 Ga. App.

6

323 (477 SE2d 605) (1996)*; Arreola-Soto v. State*, 314 Ga. App. 165 (723 SE2d 482) (2012); and OCGA § 16-13-49 (s)(2).

2. With regard to appellant's first enumeration of error, Glenn asserts that the trial court erred in striking Glenn's answer because he failed to fully comply with the requirements of OCGA § 16-13-49 (o) (3). We agree.

The trial court found that Glenn's answer failed to "provide all of the essential facts supporting the assertions surrounding the acquisition and accounting of the funds seized on December 28, 2011." Specifically, the trial court found that Glenn's answer failed to provide the circumstances showing the conversion of the settlement checks to cash and the placement of the cash in the safe. The trial court also found that since a discrepancy existed in the amount of currency seized from the safe, Glenn needed to specifically account for the $44,700 he claimed was in the safe. Instead, the trial court found that Glenn's answer contained "vague and unsubstantiated assertions concerning the partial withdrawal for nonspecific automobile improvements."

"Once the State presents a prima facie case for forfeiture in its pleadings, the burden then shifts to the claimant to establish both his standing to contest the forfeiture and his entitlement to a statutory exception." (Punctuation and citation omitted). *Edwards v. State*, 290 Ga. App. 467, 469 (659 SE2d 852) (2008) citing

7

*Howard v. State*, 223 Ga. App. 323 (477 SE2d 605) (1996). Pursuant to OCGA § 16-13-49 (o) (3) (F), "all essential facts supporting each assertion" must be provided in appellant's answer. While the pleading requirements in a forfeiture action are strict, they are not meant to be impossible. *Arreola-Soto v. State*, 314 Ga. App. at 167.

In this case, the seized property was currency, which is highly fungible, making the bills hard to trace to a particular source or transaction. *Baker v. State*, 269 Ga. App. 722 (605 SE2d 126) (2004). We find that Glenn's answer is sufficient to plead an interest in the property and comply with the requirements of OCGA § 16-13-49 (o) (3) (D) for a hearing to be conducted as to whether the property should be forfeited[5]. See *Arreola-Soto v. State*, 314 Ga. App. at 168; and *Howard v. State*, 223 Ga. App. at 323. Specifically, Glenn provided the dates he received the two checks for $29,000 each as September 16, 2011 and October 19, 2011. He provided the identity of the transferor (Don Cary Collins, Esq.) and the circumstances of his acquisition of the interest in the property. (He was a plaintiff in a lawsuit, cashed the settlement checks totaling $58,000, put the money in his safe, withdrew cash for automobile

---

[5] While we find Glenn's answer met the pleading requirements entitling him to a hearing as to whether the property should be forfeited, we do not address the merits of either the State's forfeiture case or Glenn's ultimate claims to the property. See *Arreola-Soto v. State*, 314 Ga. App. at 168.

improvements, and had $44,700 in the safe at the time it was seized by deputies.) While Glenn could have provided more details as to the partial withdrawal of funds for automobile improvements and a more precise accounting for the remaining funds, his failure to do so does not render his claim "insufficient" as a matter of law. See *Harris v. State*, 222 Ga. App. 267 (474 SE2d 201) (1996).

*Judgment affirmed in part and reversed in part. Barnes, P. J., and McFadden, J., concur.*

9